**FILED**
**Oct 10, 2023**
**03:03 PM(ET)**
**TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS**



## TENNESSE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | | |
|---|---|---|
| **Karen Eady,** | ) | **Docket No.: 2023-01-0449** |
|       **Employee,** | ) | |
| **v.** | ) | |
| **Mars, Inc.,** | ) | **State File No.: 83032-2022** |
|       **Employer,** | ) | |
| **And** | ) | |
| **Liberty Insurance Corporation,** | ) | **Judge Thomas Wyatt** |
|       **Carrier.** | ) | |
| | ) | |

### EXPEDITED HEARING ORDER
### (DECISION ON THE RECORD)

Karen Eady requested an expedited hearing based on a decision on the record. She sought an order authorizing surgery recommended by an orthopedist whom she saw after Mars, Inc. denied her claim. Mars argued that she is not entitled to benefits because she failed to give timely notice of her injury. Further, a panel orthopedist concluded that her neck condition is not work-related. For the reasons below, the Court holds that Ms. Eady is not entitled to the requested benefits at this time.

### History of Claim

Ms. Eady began working at Mars in 2006. In October 2022, she began experiencing pain in her ears, jaw, and neck while performing her duties as a candy inspector. Her personal physicians initially diagnosed temporomandibular joint (TMJ) pain. They ordered physical therapy, which caused significant neck pain.

Ms. Eady reported the neck pain to a physician she saw for pain management of a back injury. This physician ordered an MRI of the neck and in mid-November, Ms. Eady learned that the results showed abnormalities in her cervical spine. After learning this, Ms. Eady concluded that the pain she had experienced since October related to her work at Mars. She reported the injury within fifteen days after reaching this conclusion.

1

Mars listed October 7 as the date of injury on a First Report of Injury. Later, Ms. Eady stated on an accident form that she was uncertain about the specific injury date and related it to the October onset of the symptoms in her ears, jaw, and neck.

The First Report described the mechanism of injury as "using the pole to bang the hopper when candy sticks." Ms. Eady expanded on this in the accident report, writing that her job consisted of counting pieces of candy on a paddle to inspect them. She lifted items weighing between thirty to 100 pounds daily and struck hoppers with a pole to loosen candy stuck inside them.

In completing the accident form, Ms. Eady described the following thought process, which led her to conclude that she suffered a neck injury at work:

> When lifting and using the pole] I could feel the tension in my neck and some pain in my shoulder. I was already told I had arthritis in my shoulder. So I didn't think anything of that. I felt I was doing it in a safe way. My concern was a rotator cuff tear. I would keep my arm down [with] steady force forward. My ears would hurt. Went to ENT, they thought it was TMJ. Sent me to physical therapy. It wasn't TMJ. She started pressing in some areas in my neck that set me on fire. Saw my pain [management doctor].[1]

After receiving Ms. Eady's injury report, Mars offered a panel, from which she selected orthopedist Dr. Ricky Hutcheson. She saw him on December 1, when he noted that she reported working at Mars for seventeen years and was uncertain of the exact date that she injured her neck at work. He added that her work activities included lifting items weighing fifty to 100 pounds and striking a container with a rod to loosen candy.

Dr. Hutcheson wrote that an MRI of Ms. Eady's neck showed degenerative disc disease, spine curvature, and disc protrusions at multiple levels. He examined her neck and found spasms, tenderness to palpation, and diminished reflexes.

Dr. Hutcheson concluded the following on causation: "I feel that greater than 51% of this is caused by her pre-existing condition. Based off recent literature of the AMA Guide to the Evaluation of Disease and Injury Causation, Second Edition, I can say with greater than 51% certainty that THIS is NOT a work-related injury."

Based on Dr. Hutcheson's opinion, Mars denied Ms. Eady's claim.

After the denial, Ms. Eady sought unauthorized treatment from orthopedist Dr. Garrick Cason. He noted a history of Ms. Eady experiencing a sudden onset of symptoms

---

[1] In a letter to Mars's counsel, Ms. Eady's counsel stated that Ms. Eady's position was that she sustained a gradual injury at Mars.

2

in her neck, shoulder, and upper arm on or around October 7, when "she was using a long rod to 'knock candy out of a hopper.'" He wrote that she experienced an immediate onset of pain while performing her work activities. Upon reviewing x-rays and an MRI, he diagnosed spinal stenosis with cord compression and vertebral misalignment with myelopathy at several levels of the neck.

Dr. Cason recommended fusion surgery since conservative treatment failed to improve Ms. Eady's symptoms. He determined she was temporarily totally disabled due to her neck condition as of December 22. In 2023, Dr. Cason saw Ms. Eady three times through April 18 and kept her off work after each appointment.

As for causation, Dr. Cason wrote, "Based on patient's history and clinical evaluation, the current problem is consistent with the accident described by the patient." He explained, "She was asymptomatic prior, and now has disc extrusions pressing on her spinal cord [and] causing symptoms since the work-related accident."

## Findings of Fact and Conclusions of Law

Ms. Eady must present sufficient evidence from which this Court can determine that she is likely to prevail at a hearing on the merits that she provided timely notice of her injury and that her neck injury and need for treatment arose primarily out of her employment. *See* Tenn. Code Ann. §§ 50-6-239(d)(1); 50-6-201(a), (b)(1); 50-6-102(12) (2023).

*Notice*

Tennessee Code Annotated section 50-6-201(a) requires an employee to provide notice to the employer within fifteen days of the occurrence of the injury. Because Ms. Eady claims a gradually occurring injury, assessment of whether she gave timely notice is under subsection 201(b), Subparagraph (1) of subsection 201(b) permits notice within fifteen days after "the employee knows or reasonably should know that the employee has suffered a work-related injury that has resulted in permanent impairment[.]"

Here, because Ms. Eady has not undergone the recommended neck surgery, whether she will retain permanent impairment is unknown. For that reason, she has given Mars notice of her injury before the statutory time for notice has begun. Thus, the Court holds that Ms. Eady will likely prevail at trial in showing that she gave timely notice of her alleged injury.

*Causation*

Section 50-6-102(12)(A) defines a compensable "injury" as one caused by "a specific incident, or set of incidents, arising primarily out of and in the course and scope

3

of employment[.]"  An injury arises primarily out of and in the course and scope of employment only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent in causing the injury, considering all causes. *Id.* at -102(B).  The causation opinion of a treating physician, selected from a panel, is presumed correct, but it is rebuttable by the preponderance of the evidence to the contrary.  Tenn. Code Ann. § 50-6-102(12)(E).

Both parties relied on written causation opinions from physicians.  Ms. Eady offered Dr. Cason's opinion that her neck condition is "consistent with the accident described by the patient."  The only explanation he gave for his opinion was that Ms. Eady was asymptomatic before her accident at work and was symptomatic afterward.

Mars countered that Dr. Hutcheson's opinion is more persuasive and presumed correct by statute.  However, like Dr. Cason, Dr. Hutcheson gave little explanation for his opinion.  He simply stated that Ms. Eady had preexisting conditions in her neck and, without discussing specifics, cited "literature" in an AMA guide on causation as supporting his opinion.

The cursory causation opinions in this case provide little help to the Court in determining the primary cause of Ms. Eady's neck condition.  Dr. Cason's opinion is weakened by the fact that he based his opinion on the assumption that Ms. Eady sustained a single-event accident causing a sudden onset of symptoms.  However, Ms. Eady's accident report and affidavits state that she did not know exactly when she was injured.  Her statements support a gradual progression of her condition more than the occurrence of an acute incident.

Further, the standard of proof Dr. Cason considered in giving his opinion is unclear.  In finding causation, he stated that Ms. Eady's neck condition was "consistent with" the accident she described.  In *Panzarella v. Amazon.com, Inc.,* 2017 TN Wrk. Comp. App. Bd. LEXIS 30, at *16 (May 15, 2017), the Appeals Board held that an opinion an injury was "consistent" with the stated mechanism of injury was insufficient to meet the standard of proof necessary to prove causation under Tennessee law.

Dr. Hutcheson's opinion also leaves the Court with more questions than answers.  The fact that Ms. Eady's neck condition preexisted her work injury does not, standing alone, prevent her from receiving benefits.  An employee can receive benefits if a work-related injury aggravates a preexisting condition to primarily cause a disability or need for treatment.  Tenn. Code Ann.§ 50-6-102(12)(A).  Also, Dr. Hutcheson wrote that he is more than fifty-one percent certain that Ms. Eady's neck condition does not relate to work.  He did not state whether his opinion is within a reasonable degree of medical certainty as required by law.  *Id.* at -102(12)(C).

The employee has the burden of proving causation.  The Court holds that the

4

evidence in this record does not show that Ms. Eady will likely prevail at trial in proving the work-relatedness of her injury.

**IT IS ORDERED** as follows:

1. Ms. Eady's claim for medical benefits is denied at this time.

2. This case is set for a Status Hearing on **January 2, 2024, at 10:00 a.m. Eastern Time**.  You must call (423) 741-3061 or toll-free at (855) 747-1721 to participate. Failure to call in may result in a determination of the issues without your further participation.

**ENTERED October 10, 2023.**


_____
**Judge Thomas Wyatt**
**Court of Workers' Compensation Claims**

# APPENDIX

<u>Exhibits</u>:

1. Affidavit of Karen Eady
2. Second affidavit of Karen Eady (with attachments)
3. Text messages
4. First Report of Injury
5. Wage Statement
6. Panel form signed by Karen Eady
7. Notice of Denial
8. Accident reports completed by Karen Eady
9. Records of Tennessee Valley Bone and Joint (Dr. Hutcheson)
10. Fitness for Duty Certificate
11. April 27 letter from Attorney Coleman to Attorney Arnold
12. Records of Comprehensive Spine Institute (Dr. Cason)
13. Causation questionnaire signed by Dr. Cason
14. Records of Tennessee Valley Pain Management (Dr. Dreskin)

<u>Technical record</u>:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Statement of Additional Issues/Position Statement
4. Hearing Request-Decision on the Record
5. Employer's Response to Request for Expedited Hearing
6. Docketing Notice-Decision on the Record
7. Employer's First Objection and Motion to Continue
8. Employee's Response to Employer's First Objection and Motion to Continue
9. Employer's Reply to Employee's Response
10. Order Denying Motion to Continue Expedited Hearing
11. Employee's Brief
12. Employer's Response to Employee's Brief

**CERTIFICATE OF SERVICE**

I certify that a copy of the Order was sent as indicated on October 10, 2023.

| Name | Regular Mail | Email | Service sent to: |
|---|---|---|---|
| Matthew Coleman Employee's Attorney | | X | mcoleman@loganthompsonlaw.com lhaywood@loganthompsonlaw.com |
| Prairie Arnold Employer's Attorney | | X | parnold@arnold-lawyers.com |

_____
**Penny Shrum, Court Clerk**
Wc.courtclerk@tn.gov

7



## Expedited Hearing Order Right to Appeal:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____    ☐ Motion Order filed on _____

☐ Compensation Order filed on_____    ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties
**Appellant(s) (Requesting Party):** _____  ☐ Employer ☐ Employee

Address: _____  Phone: _____

Email: _____

Attorney's Name: _____  BPR#: _____

Attorney's Email: _____  Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee
Appellee's Address: _____ Phone: _____
Email: _____
Attorney's Name: _____ BPR#: _____
Attorney's Email: _____ Phone: _____
Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 ____.

_____
*[Signature of appellant or attorney for appellant]*



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____ , having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____     2. Address: _____

3. Telephone Number: _____     4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____  Relationship:_____

_____  Relationship:_____

_____  Relationship:_____

_____  Relationship:_____

6. I am employed by:_____

   My employer's address is:_____

   My employer's phone number is:_____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning | _____ |
| SSI | $ _____ per month | beginning | _____ |
| Retirement | $ _____ per month | beginning | _____ |
| Disability | $ _____ per month | beginning | _____ |
| Unemployment | $ _____ per month | beginning | _____ |
| Worker's Comp. | $ _____ per month | beginning | _____ |
| Other | $ _____ per month | beginning | _____ |

9. My expenses are:

Rent/House Payment $ _____ per month Medical/Dental $ _____ per month

Groceries $ _____ per month Telephone $ _____ per month

Electricity $ _____ per month School Supplies $ _____ per month

Water $ _____ per month Clothing $ _____ per month

Gas $ _____ per month Child Care $ _____ per month

Transportation $ _____ per month Child Support $ _____ per month

Car $ _____ per month

Other $ _____ per month (describe: _____ )

10. Assets:

Automobile $ _____ (FMV) _____

Checking/Savings Acct. $ _____

House $ _____ (FMV) _____

Other $ _____ Describe: _____

11. My debts are:

| Amount Owed | To Whom |
| --- | --- |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT


Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.


_____
NOTARY PUBLIC

My Commission Expires: _____

LB-1108 (REV 11/15)           RDA 11082